UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO: 8:13-cv-00128-SCB-TGW

ALLEGHENY CASUALTY COMPANY,

    Plaintiff,

v.

ARCHER WESTERN/DEMARIA JOINT VENTURE III,
a foreign Joint Venture, ARCHER WESTERN
CONTRACTORS, LLC, a foreign corporation,
DEMARIA BUILDING COMPANY a foreign
corporation, LIBERTY MUTUAL INSURANCE COMPANY
a foreign corporation, and TRAVELERS CASUALTY
AND SURETY COMPANY OF AMERICA, a foreign
corporation,

    Defendants.

_____/

ALLEGHENY CASUALTY COMPANY'S
OPPOSITION TO ARCHER'S MOTION IN LIMINE
<u>REGARDING ACC'S DAMAGES FOR INTENTIONAL MISREPRESENTATION</u>

    COMES NOW, Allegheny Casualty Company ("ACC"), Plaintiff in the above-captioned action, and sets forth herein its opposition to Defendants' (jointly referred to as "Archer") motion in limine concerning ACC's claimed damages for intentional misrepresentation (Dkt. 133, "Motion"). Archer's Motion confuses and co-mingles many disparate legal concepts leading the Defendant to unfounded, unsupportable conclusions. Initially, ACC must disentangle the legal principles jumbled in Archer's Motion to uncover the applicable standard to be applied to ACC's intentional misrepresentation damages under Florida law.

I.   APPLICABLE LIMITATIONS ON ACC'S TORT DAMAGES

On page 2 of its Motion, Archer sets forth the general proposition that "ACC's damages must be reasonable." ACC agrees. However, defining reasonableness depends upon context and the applicable law.

   A.   Archer's Confusion of the Issues

Archer's citations and argument on page 2 of its Motion improperly mix multiple, unrelated legal principles, the majority of which are irrelevant to ACC's damages for intentional misrepresentation. For example, Archer cites to Southwestern Packing Co. v. Cincinnati Butchers Supply Co., 139 F.2d 201 (5th Cir. 1943). This 70 year-old decision applies Texas law which varies from the applicable law articulated in Florida regarding damages recoverable from a tortfeasor such as Archer. The Defendant also cites Hartford Fire Insurance Co., Inc. v. Edgewater Construction Co., Inc., 21 A.D.3d 1312, 801 N.Y.S.2d 875 (N.Y. App. Div. 2005). In Hartford, the New York court assessed whether a surety's expenditures were in accordance with the standard set forth in a written indemnity agreement. Hartford, 21 A.D.3d at 1313. In short, this was a decision applying New York law to interpret recoverable damages under the specific limitations set forth in a written contract. The case is completely irrelevant to the calculation of recoverable damages in Florida for Archer's tortious, fraudulent misrepresentation. Furthermore, the court in Hartford determined that, indeed, the surety's expenditures "were reasonable under the terms of the indemnity agreement at issue." Id.

Archer goes on to reference the Takeover Agreement which ACC "operated under on the Project." (Motion 2). Archer insists that the Takeover Agreement "required ACC only make 'proper' payments for 'proper performance'." Id. Yet, the Takeover Agreement is wholly irrelevant to ACC's entitlement to damages due to Archer's fraudulent misrepresentation.

2

Indeed, but for Archer's fraud, ACC never would have entered into the Bond or the Takeover Agreement. Certainly, the terms of agreements that would have been avoided but for Archer's fraud cannot now be used to limit ACC's recovery for Archer's wrongful actions.

Archer's reference to the Takeover Agreement further belies its confusion and its inability to discern between contractual limitations on ACC's liability to Archer and any legal restraints on ACC's entitlement to recover from Archer in tort. Archer displays its confusion on page 3 of its Motion. There, Archer makes the completely unfounded statement that,

> ACC argued that the Performance Bond itself limited its damages to the penal sum. Furthermore, ACC argued the Takeover Agreement limited its damages to the penal sum.

Not surprisingly, Archer does not cite to any brief or filing by ACC supporting these statements. Contrary to the Defendants' contention, ACC only ever argued that its <u>liability to Archer</u>, not the <u>Plaintiff's damages</u>, was limited to the penal sum. As Archer properly notes on page 3 of its Motion, "ACC prevailed on this issue," and the Court's Order on Summary Judgment ruled that "ACC's liability is capped at the penal sum." (Motion 3, Order 27).

Despite Archer's contention, ACC's damages flowing from Archer's fraud are NOT limited to the penal sum set forth in the Bond and the Takeover Agreement. Again, these contractual agreements would not have been entered into but for Archer's fraudulent misrepresentation. Archer cannot assert the fruits of its wrongdoing as a weapon against ACC's recovery in tort. Moreover, certain costs were incurred by ACC (such as the administrative cost of managing the project escrow account) which flow naturally from Archer's misrepresentation and are recoverable as a result of that tort, but would not be included in the calculation to establish ACC's penal sum defense. The penal sum, therefore, clearly does NOT limit ACC's damages.

B.      Florida Law Limiting Recovery of Damages in Tort

The standard applicable to any limitation on ACC's damages for intentional misrepresentation is set forth in the Florida Supreme Court's decision in <u>System Components Corp. v. Florida Dept. of Trans.</u>, 14 So. 3d 967, 982 (Fla. 2009).  Archer cites to this decision on page 2 of its Motion.  In the <u>System Components</u> decision, the Florida Supreme Court set forth the test for restricting damages in tort by scrutinizing a tort victim's so-called "duty to mitigate." <u>Id.</u>  The court held that,

> The doctrine of avoidable consequences, which is also somewhat inaccurately identified as the "duty to mitigate" damages, commonly applies in contract and tort actions.  <u>See</u> <u>generally</u> 17 Fla. Jur. 2d <u>Damages</u>, §§ 103-04 (2004).  There is no actual "duty to mitigate" because the injured party is not compelled to undertake any ameliorative efforts.  The doctrine simply "prevents a party from recovering those damages inflicted by a wrongdoer that the injured party <u>could</u> <u>have</u> reasonably avoided." The Florida Bar, <u>Florida</u> <u>Civil</u> <u>Practice</u> <u>Damages</u> § 2.43, at 2-30 (6th ed. 2005) (emphasis supplied) . . .  The doctrine does not permit damage reduction based on what "could have been avoided" through Herculean efforts (citations omitted).  Rather, *the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through "ordinary and reasonable care" without requiring undue effort or expense.*  <u>Graphics Associates</u>, 461 So. 2d at 1014 (the doctrine "prevents a party from recovering those damages inflicted by a wrongdoer which the injured party" could have avoided without <u>undue risk</u>, <u>burden</u> or <u>humiliation</u>. (emphasis supplied))…

<u>Id.</u> (italicized emphasis added).

Based upon this holding, ACC, as the injured party, is "only accountable for those hypothetical ameliorative actions that it could have accomplished through ordinary and reasonable care without requiring undue effort or expense."  This is a significantly different and more stringent standard for excluding recoverable damages for torts than that applied by the Takeover Agreement for the purposes of calculating the penal sum limitation on ACC's liability

4

to Archer. Archer confuses these concepts. Applying the standard articulated by the Florida Supreme Court to the costs raised in Archer's Motion reveals that this Court should deny the Motion in its entirety.

II.     AMOUNT PAID BY ACC IN EXCESS OF PERFORMANCE BOND PENALTY - $260,018.55

On pp. 3-4 of its Motion, Archer contends that, because ACC had no legal obligation to spend more than the penal sum, ACC cannot recover as damages in tort any amount spent beyond the penal sum of the Bond. Again, Archer's logic is flawed. In support of its position, Archer cites two cases, Hartford v. Crumb & Foster Spec. Ins. Co., 2012 W.L. 2260915 (S.D.Fla. 2012) and Wright v. Fidelity & Cas. Co. of New York, 139 So. 2d 913 (Fla. 1st DCA 1962). Yet, neither of these cases addresses the issue of limitation on a victim's recovery from a tortfeasor. On the contrary, the cited cases primarily deal with a surety's indemnity rights based upon specific limitations set forth in the terms of written indemnity agreements. Such principles are not applicable to ACC's recovery of damages from Archer Western for fraudulent misrepresentation. Rather, the standard set forth in System Components, 14 So. 3d at 982, not the contractual limitations of the Bond or the Takeover Agreement, controls ACC's damages recovery. Thus, the court must hear evidence concerning the circumstances and context under which ACC's damages were incurred in order to determine whether ACC hypothetically could have avoided such costs "through ordinary and reasonable care without requiring undue effort or expense."

At trial, the court will hear evidence that due to Archer's fraudulent misrepresentation, ACC was induced to issue the subject Performance Bond. Following United's default, ACC took extraordinary efforts to complete United's work. In furtherance of these efforts, ACC was called upon to enter into contracts for labor and materials necessary to perform the work. In such

circumstances, on a complex construction project, no surety could precisely predict the exact moment at which the penal sum performance obligation cap would be achieved. The situation was such that laborers, materials and equipment that ACC had mobilized for performance were working and being placed in several different areas of the project at once. Moreover, ACC was called upon to estimate and order in advance materials and supplies needed to perform the work. It could not prognosticate expenses to the penny. Thus, the penal sum was exceeded. Demanding ameliorative efforts on the part of the Surety to predict and curtail all costs exactly at the penal sum amount would have required extraordinary efforts and/or expense, if it was even possible. ACC behaved reasonably under the circumstances extant at the project as the penal sum limitation approached. It was not required to undertake the Herculean effort of forecasting, monitoring and ceasing all expenditures exactly at the penal sum.

Notably, all labor, materials, and equipment for which the Surety paid in excess of the penal sum were bestowed as benefit upon Archer in the form of additional contract completion. Hence, to deprive ACC of recovery of these costs actually would bestow a benefit on Archer for its wrongful, tortious activity. The court, therefore, should deny Archer's Motion in Limine in this regard.

Moreover, contrary to Archer's argument on page 4 of its Motion, ACC certainly is not "judicially estopped" from arguing that it can recover these funds in its intentional misrepresentation claim. As set forth in Smith v. Avatar Properties, Inc. 714 So. 2d 1103, 1107 (Fla. 5th DCA 1998), the doctrine of judicial estoppel is "designed to prevent parties from making a mockery of justice by inconsistent pleadings" or from "playing fast and loose with the courts." Such a principle has absolutely no application to ACC's assertion of its contractual limitation on liability to the penal sum of the Bond and its completely consistent assertion that it

6

is entitled to recover all costs reasonably flowing from Archer's intentional misrepresentation limited only by hypothetical ameliorative actions that could have been accomplished through ordinary and reasonable care without requiring undue effort or expense.

III.     THE BOND PREMIUM - $33,300.00

The Bond Premium is not an amount paid by Archer for which Archer is entitled to claim a credit against ACC's damages flowing from Archer's intentional misrepresentation. Nonetheless, to the extent that Archer can demonstrate that ACC actually received the Bond premium and has not otherwise accounted for this receipt, such an amount properly would be deducted from the overall costs the Surety incurred as a result of Archer's wrongful conduct.

IV.     ALLEGED INEFFICIENT WORK, DELAYS AND DEFECTIVE WORK - $105,000.00

On pp. 5-6 of its Motion, Archer contends that ACC should be precluded from recovering in tort for an alleged $105,000.00 in inefficient work, delays and/or defective work performed by ACC. Again, Archer improperly blends principles arising from specific contractual agreements with common law limitations placed upon ACC's right to recover for Archer's wrongful, tortious activity. In support of its position, Archer cites to the case of Cincinnati Ins. Co. v. Savarino Constr. Corp., 2011 U.S. Dist. LEXIS 29899, (S.D. Ohio 2011). Yet, the decision is completely irrelevant to ACC's claim for damages due to Archer's fraud. As with other surety-related decisions cited by Archer, the Cincinnati Ins. decision is based upon language contained in a written indemnity agreement. Moreover, the court's restriction on the surety's recovery in Cincinnati Ins. Co. was based upon the surety's failure to even investigate a claim on a performance bond before paying it. Cincinnati Ins., 2011 U.S. Dist. LEXIS 29899 at 25, 28, 31, 36-38. Again, this obligation to perform an investigation was based upon the court's interpretation of specific written terms of the indemnity agreement between the parties.

The Cincinnati Ins. decision does not address limitations placed upon a fraud victim's recovery against the tortfeasor. As referenced herein, the standard for limiting such damages flowing from Archer's fraud requires the Court to evaluate whether ACC could have employed hypothetical ameliorative actions through ordinary and reasonable care without requiring undue effort or expense to avoid any impacts and inefficiencies and/or defective work at the Project. At trial, the court will hear that a certain amount of these types of costs are simply unavoidable on a project as complex and difficult as the one faced by ACC following United's default. Without hearing the circumstances and events that occurred at the project giving rise to these costs, the court should not limit any evidence demonstrating ACC's compliance with the standards set forth in the Florida Supreme Court's decision in System Components.

V.   OTHER COSTS

As Archer concedes on page 7 of its Motion, the remainder of the issues raised by the Defendant are "beyond the relief requested in [its] motion." Rather, Archer simply mentions these other points in an effort to place argument before the Court in advance of trial. ACC respectfully requests that the court discard such offerings.

WHEREFORE, ACC respectfully requests that the Court deny Archer's Motions in Limine in its totality.

Dated this 26th day of September, 2014.

                              Respectfully submitted,

                              **WATT TIEDER HOFFAR &**
                                 **FITZGERALD LLP**
                              /s/ Carter B. Reid
                              Carter B. Reid (admitted *pro hac vice*)
                              8405 Greensboro Drive, Suite 100

        McLean, Virginia 22102
        Phone:  703.749.1000
        Fax:     703.893.8029

**ETCHEVERRY HARRISON LLP**
Guy Harrison, Florida Bar No. 368806
150 South Pine Island Road, Suite 105
Fort Lauderdale, Florida 33324
Phone:   954.370.1681
Fax:      954.370.1682

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2014, I served the foregoing via ECF to the following:

Edward J. Kuchinski, Esquire
SIVYER BARLOW & WATSON, P.A.
401 E. Jackson Street, Suite 2225
Tampa, Florida 33602
Phone:  813.221.4242
Fax:  813.227.8598
ekuchinski@sbwlegal.com